and would request one minute of my time to reserve for rebuttal. Okay. This case is simply about whether the district court in sentencing Mr. Sevilla gave meaningful or adequate consideration to the Section 3553A factors that were made relevant as a result of Mr. Sevilla's sentencing memorandum and arguments presented at the sentencing proceeding. According to my, I read it very quickly, but according to a little more addicted to myself, all that was said at sentencing was, quote, so having considered all of the 3553A factors and the treatment of the co-defendants in this case, I'm willing to accept the government's recommendation. But basically, the court said, having considered all the factors, let's move on. Was that it? That's it. We had addressed, as the court knows, in fairly detailed fashion, the character, history, and background of Mr. Sevilla, as well as his role in the offense, the circumstances of it, and, of course, the disparity under the guidelines between the powder and crack forms of cocaine. And in step three of the sentencing process, as the court knows, the judge is obliged to at least address in some meaningful fashion, I think, the relevant or factually and legally supported arguments under Section 3553A. No, you didn't. Did you handle the sentencing? I did. You really didn't dwell that much on the, you mentioned it. In fact, you said you touched upon it in the sentencing memo, but it wasn't really, we see some of these were pretty forceful and protracted arguments made. Maybe it wasn't that necessary. The judge knew. The judge had been around for a long time. The judge knew the problems that were out there with the crack powder disparity. But it wasn't, I guess my point is, did you raise it to the judge's attention to the level that we could really say, well, he really did make that point. He put it before the judge, and the judge may or may not have considered the point. Well, I just looked at it again this morning. I did notice it took only about a paragraph in the sentencing transcript. But the sentencing memo contained at least a couple, if not maybe three pages, of discussion of the disparity, including a calculation as to what effect it would have had upon the guideline range if it had been powder as opposed to crack. You also raised it, though, in the orally. It's at page 74 of the appendix. You did raise it, not as fulsomely, not as much as you did in the memo, but you did raise it before. I usually assume, and I think I'm correct in this regard, that the judges have read the sentencing memo and having me regurgitate it by the sentencing proceeding is really unnecessary other than just to perhaps touch upon it. And our position is absent some discussion of those factors. In Step 3 of the process, he simply can't tell. The government is saying that, in part, that what this really is is a Step 2 case. It's a departure case. And if you follow our pre-Volker case law, that if a judge acknowledges in this case that she can depart and, in fact, does depart, we don't have jurisdiction. Well, it is a departure case in the sense that there was a departure motion, and there were considerable arguments surrounding the various enhancements, drug quantity calculations, and the 5K motion. But the rest of this material or information was presented as a separate consideration. Well, the focus of the 5K-1 from the judge's point of view was the question of whether your client deserved any 5K-1 by virtue of the fact that he attempted to obstruct justice in the view of the trial judge, even though there was no enhancement for that. That is correct. That's what was troubling the trial judge's agreed deal when dealing with the 5K-1.1 motion. There's no question that that was basically the focus of the judge's consideration and, indeed, the focus of the arguments surrounding that part of the sentencing. But it didn't get to the point where, I don't know whether it was an epiphany or what it was, but it didn't get to a point where everyone, including the government, seemed to agree that Seville was doing what he could do, but for the fact that he couldn't be stated because of the state problems that he had, that he was giving information, he couldn't do the undercover work that they wanted him to do. But aside from that, it was basically giving folks what they were asking him to do. Yeah, I think everybody agreed by the time we got through the whole process that this obstruction issue occurred fairly early on. Indeed, like almost immediately after his arrest, and then there was considerable cooperation on a number of actual issues. He was using the proffer itself to try to obstruct. He was trying to get information as to where the money was still hidden in the 5K. He was using the proffer session to question the agents. He ran out of a script. It may have been that that was the case. There was always, from Mr. Seville's standpoint, some question as to whether there was some additional monies that were missing or could be found. By him. By him or his family. One phone call. I get one phone call. Be that as it may, our position is simply that, absence of discussion in this Step 3 process, we don't think that you can fairly characterize the thing as all just involving a departure request. Indeed, we never complained about the degree of the departure at all, once it was determined that he was otherwise eligible for it. But the appropriate thing to do would be to remand for the court, in this circumstance, to complete the sentencing process. What is the standard of review here? Well, there is a bit of a split on that. I think this circuit's precedent would say that it would be a plain error standard, despite the fact that we offered that information, we argued that information. What precedent that the circuit says it's a plain error? I mean, Dragon says it's a plain error if you don't object to the parsimony provision. But here is a case where you would have an objection that the judge did not adequately consider or stayed on the record the Section 3553A factors. That would come after, could only come after, the judge made the pronouncement on page 82, having considered those factors without going into them. Is that the same as Dragon? I don't think it is. I mean, our position would be, as we pointed out in that statement, the standard of scope of review, that you could review this differently, based upon the information that was presented, as simply a challenge to the reasons. You cite an 11th Circuit case, don't you, that went the other way? Williams. And I believe the government has done the same thing. I'm not sure it's actually entirely clear. It is a little bit of an awkward situation, as you would know, at the very end of the thing saying, oh, by the way, Judge, you forgot to do a whole bunch of these things that you're obliged to do under the statute. So it is a little unusual in terms of framing the standard of review, but there does appear to be support for both sides of that argument. One, that it would fall under plain error, and two, as the 11th Circuit seemed to indicate, that it can be reviewed de novo. Or as the 10th and the 6th Circuit do, they have plain error, but then look at reasonableness anyway. So I'm not sure how you would apply it. Does Greer help you on this, or hurt you? I mean, it seems like it might help you. Greer presents a completely different fact paradigm than the one we have. Well, there's a sentencing statement. There's a statement in Greer at 475, Head Third at 561, quote, defense counsel did not object to the district court's explanation for the sentence. And then it went on to say, although he failed to object, well, although he failed to object, the court did not apply plain error. Instead, they just looked at the reasonableness of the sentence. Well, then, based on that statement, I would agree with it. It's in support to my position. I don't know if so much of the statement is exactly what they did, but it was clear that in that case, factually, defense counsel did not object to the district court's explanation, and yet the court went on to look at it. We noted that an objection to reasonableness of the final sentence will be preserved if, during the sentencing proceedings, the defendant properly raised a meritorious factual or legal issue relating to one or more of the factors enumerated in 3553A. I would agree that no matter what standard you applied here, in the absence of some discussion of those factors in Step 3, it would meet either. And based upon that, we'd simply ask the court to remand for the court to complete that part of the sentencing process. If we do remand, to what extent does this Kimbrell figure in here? There wasn't a situation where the court said, I am troubled by the crack-powder ratio, but that's what the Sentencing Commission put out there. Congress adopted that. I can't do anything about it. And we see a lot of those cases that this isn't one of those cases. The argument was made, and it just seems that it didn't really stick. Is that in this case at all, if it does get remanded? I think it's in the case simply because Kimbrell, at least from a district court standpoint, it clarified and expanded or maybe changed the emphasis that the court could place upon that disparity prior to that under Riggs and Gunther. I think the disparity needed to be linked to something else particular in the case, like this guy's role or a one-time thing. And Kimbrell seems to suggest, Even in a mind-run case is the phrase that Kimbrell used. The rest of us will just go run-of-the-mill. That's primarily here. Exactly. So I think if it were to go back, the court would be perfectly within its discretion to both consider the statements and reasoning in Kimbrell, and indeed, if the case were to be remanded, the more recent version of the guidelines from 2007 would apply because it would be a new sentencing proceeding. So Mr. Sevilla would find himself with the benefit of a two-level decrease. Are you going to apply for that in March when you can? If the case were not remanded, I think that would be a separate issue. I think then administratively he could seek to invoke under 3582C2 the application of the two-level decrease. But if it's remanded, then the guideline book, in effect, at the time of resentencing would apply, which would be the November 2007 guidelines. Thank you, Your Honor. Thank you very much. Mr. Smith, you finally get your day in court. Thank you, Your Honor. For the record, may I please the court? My name is Ted Smith. I'm an assistant United States attorney for the Middle District of Pennsylvania, representing the United States, who is the appellee here. Might you start off with the standard of review and then whether you wish to press whether this should be thought of simply as a departure and not at step three? Certainly, Your Honor. With regard to the standard of review issue, it's our position that the standard of review is a plain error standard. I'm not sure this court has squarely addressed that question in any of the various appeals in front of it. We cite Lloyd post-Booker appeals in front of it. We cite Lloyd where the court, in a published decision, appeared to apply the plain error standard but also said there wasn't any error at all, so the standard of review was not determinative. In Greer, I'm aware of the language, Your Honor, read from the Greer decision, but again, we weren't really arguing about the standard of review there. There's a couple of recent non-presidential opinions where we've come out differently. There's one called Williams, which came out on December 11th, which cites Greer for saying that the argument that somehow there was a waiver and we should look at plain error was foreclosed by our decision in Greer. Ten days later, in a case called Johnson, we held that plain error applies and that we were following the concept that was put out in the Dragon case in which somebody did not object to the parsimony provision, which is thou shalt not do a sentence greater than what is necessary. Let me ask you one question just on Dragon for a second. Is there an argument, and I'm looking at Kimbrough, where it says on page 570, the statute as modified by Booker contains an overarching provision instructing district courts to, quote, impose a sentence sufficient but not greater than necessary to accomplish the goals of sentencing, et cetera. Is there an argument now that district courts have to do that no matter what the defendant does? Whether you object or don't object, you have to follow the overarching provision that you have to impose a sentence sufficient but not greater than necessary. I do not believe so. I think the so-called parsimony provision is no greater or no less than any other 3553A factor. But why do you have to bring it up? Isn't that what the district court has to do under 3553? No, the district court clearly doesn't have to address every issue or every one of the 3553A factors, seriatim, if they're not raised. Although in this case, we'll come to that later on, you've got to address some of them, don't you? You do, and I think the district court did here. I had this difficulty with the court in Greer as well. Of course, I came out on the wrong end of that, although on the good end, you came out all right in Greer. But it's my view that you have to look at more than that statement of reasons that the court gives after pronouncing a sentence. I think you need to look at the whole transcript. And if you look at this, this is a case where you ask a question of Mr. Ulrich about all the parties being in agreement that he shouldn't get obstruction and should get acceptance of responsibility. Well, all the parties were, but the probation officer wasn't. And the judge wasn't. And the judge had some real misgivings. Even to the end. Even to the end. Express term misgivings. The judge was not happy with that decision. And the probation officer wasn't happy. So we have a guy who comes in with a PSR, level 36, criminal history category 3, who's looking at 235 to 240 months, capped only at the upper end by the statutory maximum. And then we, as a result of the United States agreeing that it's really not in a position to prove the higher drug quantity, and then the United States. I'm going to ask that question. Never mind. And then the United States conceding these issues that actually troubled the district court, and wasn't sure it wanted to accept our concession, getting the defendant down to level 29, 108 to 135 months, and then moving for a four-level downward departure, which gets him down to 70 to 87 months, and the judge imposes 72 months or six years. So I think the judge was responding to what the judge was presented with. And the big issue going into this sentencing was there were objections to the guidelines calculation. And I want to resolve those, and I really am troubled about this whole acceptance and obstruction issue. And ultimately, the judge goes with what the U.S. attorney argues. Counsel, at least in New Jersey, the U.S. attorney frequently gets a provision in a plea agreement that the defendant agrees not to argue for a downward variance, and the government agrees not to argue for an upward variance. They actually agree right in the plea agreement. In other words, it's step three not to argue for that. The other Williams case, the published Williams case. And I get those every week almost, a case like that where they've agreed. And the lawyers usually honor it, usually, meaning the defense usually honors that provision. My position has always been, and you get to overrule me now, my position has always been that even though the parties have agreed not to argue for a 3553A variance, it's still my duty under Booker to go through the record to see what I can see and make a judgment. Let's start with that. Do I do the right thing when I do that? Do I have an obligation to do that? Even where the parties themselves have said, we're not going to argue. And in Williams, by the way, as you know, a defense, the government appealed the defendant who argued for a departure in face of that agreement, and they reversed. They sent it back. And even ordered a different judge on the case, as I recall, in the Williams case, which is published as a presidential opinion. Now, to answer your question, yes, you're doing the right thing. Well, if I do it where nobody argues for it, they've even agreed not to argue for it, shouldn't I even more so do it where the parties have made no such agreement and the defense lays out in fair detail what it considers to be the 3553A factors I ought to consider? Do you know what I'm driving at? Nobody asks for it. I know what you're driving at. And my answer is that I think you have to look at what's on the table here. And what's on the table is possibly 235 to 240 months. And it was never an issue in the judge's mind, based on this record, whether the judge was going to vary as well as departing downward for substantial assistance when the judge clearly had all these misgivings about whether she was even going to agree that there was no obstruction and agree that there was acceptance of responsibility. Also, the crack amount also bothered her. Yes. Earlier in the transcript, she was bothered by the fact that the real amount of crack in the, I think it was crack in the transaction, was much higher than the 109 or whatever it is they ultimately pledged to. And we said that we didn't think we could prove that. And I'm not sure the judge, you know, was buying that entirely. Buying where it's 109? No. To prove the higher quantity. Well, what does that do then? Where does that leave us? If the government is signing a book intent with 109 grams and the judge is signing 109 grams of wink, wink, and then says something where it's like, well, I've considered all the 3553A factors, it makes it hard for us to get a handle on what was really going on in the judge's mind with the sentence that finally was churned out. Well, I think what was going on in the judge's mind was what the judge said, which was, you know, I disagree with the characterization that all the judge said was so having considered all the 3553A factors. I think you need to turn the page backwards and start with the judge's entire colloquy. I'm going to follow the government's recommendation. I'm just going to take it on faith that it's well-founded. And in doing that, you know, I'm not going to enhance the sentence for obstruction. I am going to agree that there's acceptance. I don't know all of the circumstances involving defendant's cooperation. It's very hard for me to find, intellectually hard for me to find, that he's entitled to the credit for acceptance of responsibility. When I read this transcript, it does look like somebody who has obstructed justice. So once I get past the place of accepting that the government wants me to decline to give Mr. Sevilla the slap that he's entitled to receive for that, then I think, well, you know, he shouldn't get as much credit on the downward departure. But then I guess I'm persuaded more than anything by the treatment that was given to his co-defendants who are more culpable than he. So right there the judge is considering disparity, which is one of the 3553A factors. But isn't disparity not for co-defendants? Isn't there a case law that the disparity provision doesn't apply to people in the same case? It applies rather across the board nationwide. Isn't there a specific? Yeah, there are cases. There are specific cases which hold. But if you don't look at three co-defendants and the disparity provision doesn't deal with that but deals rather on a more cosmic national basis. Well, I haven't looked at this case law. But nothing says in this area to do that either. Exactly. That would be my answer to your question. There's nothing wrong with doing that. And I think the judge is doing that. What we've done is the co-defendant in a case gets a sentence and he says, wait a minute, my other co-defendants got off lighter than I did. We have said, no, you look at A6 disparities by looking at the empirical evidence as to what is done nationally not necessarily with regard to what's done in your own case. But you also look at similarly situated defendants is what the case law has said. So I think what happens to the co-defendant in this case is part of that bigger national picture. And I think it's appropriate. Is it part of 3553A really though? Because every defendant is so different. I get that. I'll get sentenced 10 different people in a conspiracy. When you look at it on the surface, it gets very, sometimes you look at it, why does this guy only get 24 months and this guy got 63 months? But you get into it. There's different criminal histories, different subtleties. There may be different kinds of cooperation, no cooperation. I mean, each individual gets so different. Well, the district courts are, I'm sorry, I interrupted you. The district courts are generally resolving it in exactly that fashion. These are not two similarly situated defendants. And therefore, there's really no disparity at all. I'm simply saying it's not error for a court to include in its calculus of the disparity issue under 3553A, I forget the number, to include other defendants in this case as part of that calculus. That would be A6. But, I mean, again, if you can't, if the defendant can't do it, what allows you to say that that was done here and therefore she complied with A6? Implicitly. I thought she said, did she say that? She said, but then I guess I'm persuaded more than anything to his co-defendants who are more culpable than he. But I think Judge Arenas' point is well taken. On the other side, when it's a defendant, you have to look at what the empirical evidence is for people who are similarly situated nationwide. Well, this is, I mean, I'm arguing that the court did it here, but the court in doing it here was doing it to the benefit of the defendant. The problem is, in our case, you may be right, and even if this goes back, it'll probably be a 72-month sentence, you know, come hell or high water. Maybe she'll use it to raise the sentence. It's possible. It's possible. I mean, there's a risk that the defendant's taken here. There's no doubt about it. If the probation officer gets his way, she will. Yeah, quite possibly. But how do we do a meaningful review? And I realize there's a tremendous amount of discretion that's given to the district court, and I would argue quite correctly, and the Supreme Court has made that very clear in Gall and Kimbrough. But we have cases that say we can't, if there isn't much here, we can't do the review. And we try at times. We'll sort of say, okay, here's what they meant, and yeah, but there's not much here. You know, I'm at the unenviable position of having to say I disagree with you. I think there's quite a bit here. Okay, but you tell me what you see here. Well, I see that issue that I just mentioned, the disparity issue. Yeah, we talked about that may not necessarily be as applicable as you think. And I also think that the entire colloquy by the court regarding it being intellectually difficult to find that he's entitled to acceptance and that he didn't obstruct is very much a part of the court's consideration of the nature and circumstances of the offense. Or the character of the defendant. And the character of the defendant, okay? And I think most of this court's case law is centered, affirming district court exercises of discretion post-Booker, is centered on cases where that's about the number of factors that are specifically mentioned by the judge in imposing sentence. You know, I really think you have to look at more than the this is my statement of reasons. I think you have to look at what the judge says as the judge imposes the sentence. And I think it's pretty clear here that the judge was very troubled by this defendant and some of his conduct. Now, ultimately she granted the government's motion for downward departure. And the only, I'm not sure she granted it to any lesser degree than what the defendant at that time wanted her to do. But the defendant filed a notice of appeal. She says, so having considered all of the 3553A factors and the treatment of the co-defendant in the case, which co-defendants in the case, which sounds like she's saying that's an additional factor beyond 3553A, which I would agree with. Where in here does she run through the 3553A factors? She doesn't. But Cooper and many published decisions of this court say that she doesn't have to run through. But we have said she has to run through the relevant ones, not the irrelevant ones. She has to run through the relevant ones. And particularly she certainly has to address any issue of arguable merit raised by the parties. He's saying it's assumed in the overall. I think it's assumed in the overall colloquy that the court gave. If they finally run through them, where is A1 in the discussion that gives the court's view of how she's dealing with A1? Again, she doesn't have to go through each one. Let's go through A1 through A7. Which one's irrelevant? I think the one she named, the disparity, which I think was within 3553A. I don't think she thinks it is. And the nature and circumstances of the offense, including what she believed to be at least borderline obstruction of justice and lack of acceptance of responsibility. And the character of the defendant. Let's go through it. How much character of the defendant does she go through here? Other than the fact that he was playing fast and loose, she thought. That's a factor bearing on the character of the defendant. It was the one that seemed to be most influential in her mind. I'm not going to be able to, I mean, I think it would be a waste of the court's time for me to try to say that there's any more than what's there. There is no seriatim review of each of the 3553A factors. Let me come back then to where we started on the standard of review. Does it make any difference if the standard of review is plain error or just plain reasonableness? I think it does. Because the Sixth Circuit and the Tenth Circuit seem to say, you know, if you don't object, it's plain error. But, hey, we've got to look for reasonableness. Isn't what the Supreme Court tells us that overarching no matter what happens, you've got to have a reasonable sentence? Yes, but I think standard of review is still going to affect how the court looks at whether the sentence is reasonable. When I read Kimbrough and Gall, it looks like our standard of review is abuse of discretion. I mean, it's sort of pounded on us. And, again, I agree with it. But what makes it tougher than abuse of discretion, the ultimate sentence? Plain error. Because if the problem that the defendant has with this sentence isn't or is that the court did not articulate the court's reasons. Can abuse of discretion ever not be plain error? Let me phrase it that way. Could a court find that, yes, you abuse your discretion, judge, an appellate court. Fine. District judge, you abuse your discretion. But we find it's not plain error. You didn't abuse it enough. It almost seems like we're playing with a theoretical concept that has no real practical effect. Angels dancing on the hairs of pens again. I think I heard that yesterday. When I look at the 6th and 10th circuit, I mean, you know, they'll use that. And then there's other circuits that say just 7th, for example. Just forget it. I mean, it's reasonableness. You can't get away from it. Essentially for the reason Judge Irenas just said. Well, you see, I think it is possible to conceive of a case where the court would reverse on a pure reasonableness or abuse of discretion standard of review but not on a plain error standard of review. Whether this is that case or not, I don't. What would be an example of that? Just thinking theoretically. I think the court, for instance, having an issue brought before it and the court not considering that issue as one of the 3553A factors and the defendant not, or I should say not bringing the issue before the court and the court not considering it. And then it's questionable whether the issue really should or shouldn't be considered. I think under a reasonableness standard, maybe that gets reversed. But under a plain error standard, if it's questionable, because the error wouldn't be plain. The abuse of discretion in not considering that issue would not be plain. So I think it would lack plainness there. Is there an appellate court anywhere, with all due respect to my temporary colleagues, which has enough discipline to say I know there's abuse of discretion here but it's still not plain error? Is there any appellate court that has that kind of discipline? I think in the evidentiary area, yes. And I can't cite a case where it's happened in any other area. I will say that this is a court that is more attuned probably than any other court of appeals in the country to standards of review. As I teach appellate advocacy, I tell people from the Third Circuit that this matters to everybody. But in the Third Circuit, it really matters. Because if you look at their published opinion, every single one, not every single one, but the vast majority of them start with a specific paragraph, a headed, titled paragraph regarding standard of review. Having said that, ultimately, if what we're looking at is a reasonableness of the sentence, then I think, and this is a point I wanted to get to, I think this is a reasonable sentence. And I think everybody looking at this thinks it's a reasonable sentence. I think if it's unreasonable in any respect, it's too light. But we're not arguing that it is. So the question is, was the court's articulation of reasons sufficient to enable this court to determine that it's a reasonable sentence? And I think if you look at this entire sentence. There is the issue. Yeah. The implication of 3553A, in getting to what you argue is a reasonable sentence, is sufficient to allow us proving for reasonableness. It's a step three and a half case. It's almost like under Gaul, certainly it's not a question of the substantive part of the analysis. But there's a procedural part that you have to go through. And there's a concern here that the procedural steps were not covered by the court. By having, maybe she thought she had done, as you suggested, covered the various 3553 relevant factors. I just, I don't see it here in this transcript. Well, I certainly think she thought she had done that. I agree with you. I don't think we have a judge here who is just saying, I'm not going to. I completely agree. I think we have a judge who is very focused on what the issues, the real issues of this sentencing were. And tried assiduously to resolve those real issues and make everybody aware of why she was deciding the case the way she was on those real issues. And that's the problem I think every judge has. You know, the judge is going to decide the case based on what's really at issue before the judge. And sometimes is not going to leave every stone unturned on things that really aren't on the table. And a greater departure than the four level departure the judge granted, based on 3553A factors, when the judge very clearly had misgivings about even reducing the guideline range to where it did, simply wasn't on the table. It wasn't going to happen. You know, when I do sentencing, I find that a lot of lawyers, when there's a 5K1 motion on the table, conflate steps two and three, which they don't do with other kinds of issues. The attitude is sort of, well, now the judge can do anything he or she wants, therefore we don't really have to get into the fine points of two and three. I've always taken the position that it's a step two, that the 5K1 is a step two exercise. I don't think there's any doubt about that. And then after I get that number, get my final guideline number, I then move to step three, because in 5K1, technically the Torres factors have nothing to do with what's in 3553A. It has to do with promptness, effectiveness, putting yourself in danger, you know, the five of them that are there. None of those raise really anything to do with 3553A. But, you know, the judge here, the judge did engage in Gunter three-step sentencing very clearly, because when addressing all these guidelines issues, the judge said, you know, because Mr. Pfister, my colleague, you know, was mixing apples and oranges a little bit, and the judge said, well, you know, Mr. Pfister, first what we have to determine is what's the starting point. And it may be that I'm going to give a greater consideration of the amount of assistance he gave, because the starting point is high. But she ultimately decided not to do that and to lower the starting point, but still to give a four-level downward departure, but simply not to vary any further. But the question, if stuff was brought up by him, let's say, for example, his upbringing, I can't find that in the transcript. He's saying that's something you should take into account, and I don't see where she discusses it. The crack versus powder issue that he brought up, I'm not sure that that disparity was necessarily discussed by the court. Well, I do want to – I would like to interject there, because there is another set of appeals that were consolidated for argument, and I know one of them is United States versus Antonio Cooper, and I argued it, I think, just about a month ago before Judges Frentis, Hardiman, and Jordan, I believe. And those were three cases, three Judge Kane sentencings, where the defendants each claimed that based on Gohl and Kimbrough, but particularly on Kimbrough, they had to go back. And, of course, our argument was that, you know, following Judge Ambrose's opinion in Gunter, I was like the Southwest Airlines commercial, I wanted to be someplace else. But after Kimbrough, I'm feeling pretty good about being in the third circuit, because Gunter presaged Kimbrough, even though the Kimbrough Supreme Court didn't mention Gunter. It mentions it in a footnote. Does it in a footnote? It said there was two circuits, Pickett, the D.C. circuit, and the third circuit, and there was about six or seven circuits against us. Yeah. So while I was buying my loans from them. Yeah. So, Judge, in those three cases, there's just, which I think the court can look, take judicial notice of the fact that this judge clearly understands her discretion to consider the power disparity. In one of those three cases, she dramatically varied downward. In another, she said, you know, I normally would impose a sentence in the middle of the range, but I'm going to impose a sentence at the bottom of the range because of the disparity. And in the third case, she said, you know, left to my own devices, I would impose an upward variance in this case, but I'm going to impose a sentence within the range because of the harshness. Are those cases post-Gunter or pre-Gunter? They are post-Gunter. They're cases that are before the court now. But this is a pre-Gunter case, isn't it? I don't believe, no. This sentencing occurred in January of 2007. And Gunter was decided in September of 2006. So this is a post-Gunter case. If this were a pre-Gunter case, then I think there would be a question as to whether the court understood her discretion to vary on that basis. But there's no question at all regarding Judge Kane's in particular knowledge of her case. But the point being that there was something brought up by the defendant here, and it doesn't appear two issues. They don't appear to have been discussed much at all in the transcript. Because to the court it was not a relevant issue, considering all the other things that the court. Do we then send it back and say, look, if you think an issue that's brought up is not relevant to where we're going to go into 3553A, just tell us that so that we know that it's there and you consider it. And I'm not sure we can even do that under Cooper. I thought Cooper said that if the defendant brings something up, you at least have to digress it. Well, even if you say it's irrelevant. No, I think the court could say I think it's irrelevant. That issue is irrelevant to me. It might be here's why it's irrelevant. Crack versus powder, it was clearly not irrelevant. And in the course of doing that, the court would essentially be answering why it's not doing it. I guess my answer to your question, should you do that, is I don't think so. And I can only say that I think between Booker and Kimbrough and Gaul and all that has taken place since Booker, we have managed to make sentencing, I think, extremely complicated. I thought you were going to say we managed to make sense out of sentencing. I was going to say we're the only ones. For district court judges. And I think I'm just opposed to placing any more hoops, so to speak, before the district court judge to jump through to make reasonable a sentence that everybody in that courtroom knew was reasonable, with the exception of the probation officer who thought it was too low. But the one hoop that we have that is front and center is that when you sentence, you have to give your reasons. Well, I've argued that, and I don't think this court has squarely addressed that issue because the Sentencing Reform Act says no such thing. And Booker didn't change that. The Sentencing Reform Act says that if the span of the range is more than 24 months, you have to give your reasons. And before Booker, that was complied with by a court simply saying it's within the guideline range and the court sees no reason to depart downward below the range. Now, there is no published decision I'm aware of where the court has really gone into whether anything greater than that is required. And we've argued that it's not. But we have said that you have to address all of the relevant 3553A factors or else we cannot do a meaningful review. In order to determine whether the court abused its discretion, we must first satisfy ourselves that the court exercised its discretion considering the appropriate factors. We have said that the court exercised its discretion. Although there's some language that goes both ways, Gall said it's common sense that when you sentence, you have to give justification. It also implies that it's common sense that if you vary significantly, you have to give some perhaps increased justification. But nonetheless, it can't be proportional or a mathematical formula, which God knows how that's going to play out. But it would seem that there has to be justification. That is common sense, I would think. And I can't imagine the Supreme Court saying you don't have to give your reasons, even if you're arguing technically it's not required under the Sentencing Reform Act. That would be a tough one to... I wouldn't want to have that one go up. It would certainly be a tough one to predict that the Supreme Court would say that. I think there is a very good, strong legal argument still, because of the Sentencing Reform Act and because of provisions in the Sentencing Reform Act that were left intact by the court in Booker, that the court need only state a detailed statement of reasons for a sentence if it's outside the guideline range or if it's within the range, and the range is so broad. And I think Rita sort of helps us in that regard. The court may indulge a presumption that a sentence within the range is reasonable. Although so far this circuit hasn't done that. I understand this circuit hasn't, but it's only opportunities or it's only real articulated opportunities to do that were before Rita. If you saved a minute, I want to do a John Edwards imitation over there and get ignored. So why don't we... I'm way over my time, I know. Thank you very much. Thank you. We did want to order a transcript. And if you want to see Ms. Lang, she can tell you how to arrange for that. We will. I've ordered one in the past. I know there's one particular individual who does a splendid job of doing them. And I presume that the cost of that would be split between the parties. I wouldn't assume that. No, I wouldn't assume that. Just have the government do it. Yeah, have the government pay for that. But that's a very good trial, though. The bosses are proud of you. I've been doing it at all times. You're ordering it. Is that an order? That's an order, yes. Despite the smile, it's an order. Thank you. Thank you. Next matter is Pineda v. Ford Motor Company.